James Blaze # 12026026  
FCI Beckley, PO Box 350  
Beaver, WV 25813  

Exhibit D

December 23, 2006

**FILED**

JAN 3 1 2007

David A Faber  
Chief Judge  
Robert C. Byrd Courthouse  
110 N. Heber St.  
Beckley, WV 25813  

TERESA L. DEPPNER, CLERK  
U.S. District Court  
Southern District of West Virginia

Re: Retaliation by staff because of my exercising my constitutional right to express grievances

Dear Honorable Judge Faber:

I write today to apprise you of the threats I have received from certain staff members here at FCI Beckley because I will not drop my administrative remedy expressing a cruel and unusual punishment issue. I write to you before any action is carried out by these certain staff members.

Food Supervisor Worrell committed a serious violation on my rights, see Exhibit A (my administrative remedy), so I expressed my constitutional right to petition for redress, as stated in Hudson v. Palmer, 486 U.S. 517,522 (1984).

Since then, certain staff members have been trying to get me to drop it. Ms. Satteson, in particular, just the other day, called me over to her and began to speak to me in a very unprofessional, disgruntled way. She called me a "sick fuck," and said that she will "crush" me. She said that she has "crushed USP giants," and that I will be no problem. She said that she has been doing this "for twelve years, and that I am "nothing." She said that if I "don't drop it [she] will bury [me] so far in the hole that [I'll] never get out."

After that incident, Mr. Corrnell, RDAP Counselor, started on me for a half of an hour, trying to get me to drop it. He said that I "better drop it because inmates don't stick together but we guards do."

I just want to be left alone. I am not good with this stuff, and I have to have another person write for me. I had a accident and my brain is bad. Please file this in case something happens to me. I wish to file a civil action as soon as I can. Ms. Satteson even threatened that she would get the guys who signed affidavits for me. Ms. Satteson is the Food Aministrator here.

I thank you for your time and patience with this matter; have a nice day.

Respectfully submitted,

James Blaze  
James Blaze

Enc. Administrative remedy  
Copy of letter to Central Office

James Blaze # 12026021
FCI Beckley, PO Box 350
Beaver, WV   25813
December 23, 2006

Charles E. Samuels Jr.
320 First St.
N.W.
Washington, DC   20534

Re: Threats of retaliation for exercising my right to petition for redress on 12/20/06

Dear Mr. Samuels:

Recently, I have exercised my right to petition for redress of a grievance; however, I have been threatened and harrassed ever since. I write today to apprise you of these threats before they may occur. I ask that you please take them serious, for I have better things to do than "cry wolf."

After expressing a cruel and unusual claim, see attachment, Ms. Satteson, Food Administrator, has threatened me two times. Just the other day, however, the tone of her voice and look in her eyes lets me know that she is serious. She called me a "sick fuck," and said that if I did not drop my administrative remedy that she would "crush me." She said that she has "crushed USP giants," and I would be nothing. She said that I was "nothing." She said that she would bury me so far in the hole that I would never get out. She mentioned threats about the guys who wrote affidavits on my behalf.

After that ordeal, I went to my drug counselor, Mr. Corrnell, for help; however, he started on me also. He said that it would be best if I dropped it, that inmates do not stick together but "we guards do." He tried for a half an hour to convince me to drop it.

I have a brain injury and I am not good with things. I have others who help me. I do not wish to drop this administrative remedy because what the food supervisors are doing in the kitchen are wrong.

Please file this so that it may be on file in case some thing happens to me. I thank you for your time and patience with this matter' have a nice day.


Respectfully submited,

*James Blaze* (signature)
James Blaze

Enc. Administrative remedy

cc. Chief Judge Faber

U.S. DEPARTMENT OF JUSTICE      REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: __BLAZE,_____
      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A- INMATE REQUEST**   This is an appeal of the finding of guilt by the UDC for a Code 317 violation; While this is an appeal, it reaches far beyond just an appeal, digging deep into the realms of malfeasance, moral turpitude, and cruel and unusual punishment. As will be elucidated, Food Supervisor Worrell's actions on 11/10/06 stand as shocking and antithesis to the established ethical principles of society, for even dogs are let out so they may defecate and urinate. See Exhibit A (Blaze's affidavit describing the very facts of this incident) before Blaze proceeds with this grievance.

    Rather shocking, isn't it? At this time, Blaze asks any reader to recall a time when he or she had to use the restroom and was delayed from it. Not a joyful experience to say the least. The pain and stress that comes from trying to abstain the biological need to defecate--even urinate--is by no means trivial and should not be treated as de minimis. It is corporal punishment, which is defined by Black's Law Dictionary, Eigth Edition, as "[p]hysical punishment; punishment that is inflicted upon the body." Any human knows what it can be like to experience delay in using the bathroom, now compound it with the deliberate intention of withholding by an arbitrary, inethical person.

    While the debate on corporal punishment is not novel, compare <u>Tally v. Stevens</u>, 247 F. Supp. 683 (E.D. Ark.1965) (holding it constitutional) to <u>Jackson v. Bishop</u>, 268 F.Supp. 804 (E.D Ark. 196 (where the reasoning eliminated corporal punishment, reasoning that has been followed in judicial

__11-29-06__     (SEE ATTACHMENT)        _[signature]_
   DATE                                                                        SIGNATURE OF REQUESTER

**Part B- RESPONSE**

 

     DATE                                                             WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE            CASE NUMBER: _____

                                                                           CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____                            _____
   DATE                                                            RECIPIENT'S SIGNATURE (STAFF MEMBER)     BP-229(13)

decisions, statutes, and administrative rulings) when it was executed, it was punishment for bad behavior, not for natural bodily functions such as the need to defecate.

It is clear that Blaze alleges cruel and unusual punishment, an Eigth Amendment violation, inter alia, which is defined by Black's Law Dictionary, supra, as "[p]unishment that is torturous, degrading, inhuman, grossly disproportionate to the crime in question, or otherwise shocking to the moral sense of the community." Blaze asked not once, not twice, not thrice, but eight times before resulting to the humiliating, disgraceful act of defecating in the bucket (see Exhibits B), albeit better than his pants, which means Worrell denied him eight times. "It is essential to the orderly running of any Bureau facility that employees conduct themselves professionally." Program Statement 3420.09, Standards of Employee Conduct, Section 9. In Young v. Quinlan, 960 F.2d 351, 365 (3rd Cir.1992), the court found the officers' actions cruel and unusual because they repeatedly denied Young's requests to be allowed to leave his cell to use the lavatory.

The Eight Amendment is not a prisoner's cushion that mandates prisons to be comfortable, but it does proscribe "the 'unnecessary and wanton infliction of pain,' which includes those sanctions that are 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" See Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir.1982) (quotations omitted). This applies to any punishment that deviates from the ethical principles of a progressing society. Estelle v. Gamble, 429 U.S. 97, 102 (1976).

When ruling if conditions, such as the refusal to allow an inmate use of the bathroom, are in fact against ethical principles, courts "consider opinions of experts [. . .]" Hoptowit v. Ray, supra at 1246. A person is obviously not in control of his or her digestive system. Miller-Keane's Encyclopedia and Dictionary of Medicine, Nursing and Allied Health, Sixth Edition, states:

> The feces are formed in the colon and pass down into the rectum by the process of peristalsis. When the rectum is sufficiently distended, nerve endings in its wall signal a need for evacuation, which is made by a voluntary relaxation of the sphincter muscles around the outer part of the anus. The **frequency** of bowl movements **varies** according to the individual body make-up, type of intestine, eating habits, physical activity, custom. (Emphasis added.)

Farmer v. Brennan, 128 L.ED.2d 811 (1994) established a two prong test to suffice cruel and unusual punishment. "First, the deprivation alleged must be, objectively, 'sufficiently serious' [. . .]; a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities'" id. at 823. (Quotations omitted.)

"The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eight Amendment' . . . To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'" id. at 823 (quotations omitted).

Refusing Blaze, a human, the organic right to exercise his biological need to defecate surely suffices the first prong; moreover, repeatedly denying Blaze the right—eight times—to use the bathroom shows a culpable state of mind. Program Statement 3420.09, supra, Attachment A note 9 provides a penalty for "disrespectful conduct." Note 35 provides a penalty for "[c]riminal, dishonest, infamous, or notoriously disgraceful conduct" behavior. Worrell's behavior surely falls under these penalties.

Blaze request his 317 violation expunged; he be placed back on his job; Worrell be reprimanded for his disgraceful behavior, and inmates not be harrassed for using the bathroom.

Affidavit in Support

I, James Blaze, do hereby depose and state the following in regard to the incident involving Food Supervisor Worrell and me:

1. On 11/9/06 Mr. Worrell told me that I was a real nuisance because of my frequent usage of the lavatory, a process that called for the opening of the door by Worrell;

2. Worrell told me to use a bucket that was inside the room ( butcher shop).

3. I explained to him that I can urinate in the bucket but that I needed to defecate;

4. He rudely advised me that I need to use the lavatory for this before I come to work;

5. On 11/10/06 at approximately 6:25 A.M.--after I had been working for about one hour and twenty minutes--I went to the door to signal to Worrell because I had to defecate;

6. When Worrell noticed my signaling, he simply shook his head "no," so I put my mouth to the crack of the door and yelled that I had to defecate, which generated another head movement of no and his walking away;

7. At that time, because he was standing next to Worrell, I signaled for Food Supervisor Lucas, for which he motioned with his hands that he had to watch the cooks cook the fish;

8. At that time, I began to try and hold my need in check while I commenced to work again;

9. Some time later, Worrell walked back by Lucas, and I again asked him--he said, "no";

10. At my request, Inmate Backer (see Backer's affidavit, Exhibit B) told Worrell that I said please let me out, that it was urgent--Worrell refused;

11. After about ten minutes, I could barely stand it, so I sent Backer to Worrell with the message that I would be forced to use the bucket, which Worrell seen me holding the bucket in the air--Worrell shook his head "no";

12. When Backer gave Worrell the message again, Worrell refused;

1

13. Barely being able to stand it any longer, I went and put sanatized water in the bucket and showed Worrell it--he looked the other way;

14. I simply could not stand it any longer. I was on the verge of defecating in my pants. My stomach was in severe pain, so I had to make an urgent choice: defecate in my pants or the bucket, both being humiliating, so I chose the bucket;

15. When Worrell came into the butcher shop later--after being apprised of my humiliating deed--he became disgruntled, ordering me to dispose of the bucket in the dumpster leased by Lusk Enterprise and taking me to the SHU;

16. Since this incident, I have suffered major antagonistic ridicule from both staff and inmates, "shitty bucket" being just one of the many names;

17. Staff also told me that I should have defecated in my pants and I would not have received an incident report.

I declare under penalty of perjury that the foregoing is true and correct. Executed on __28__ day of __11__, 2006.

Respectfully submitted,

*James Blaze*
James Blaze # 12026-021
FCI Beckley, PO Box 350
Beaver, WV   25813

2

Affidavit in Support

I, Wayne Baaker, do hereby depose and state the following pertaining to the Worrell and Blaze incident:

1. I do work in food service at FCI Beckley;

2. I was present and witnessed the incident on 11/10/06;

3. Inmate Blaze did ask me to tell Food Supervisor Worrell that he had to use the restroom, that it was urgent;

4. Worrell did, in fact, refuse to let him out;

5. Approximately ten minutes later, Blaze again asked me to ask Worrell, asking me to tell Worrell that he (Blaze) would be forced to use a bucket;

6. Worrell did again refuse to let Blaze out;

7. It was apparent to me by Blaze's requests and demeanor that he was on the verge of defecating in his pants;

8. Worrell was very disgruntled that morning;

9. I make this declaration free from coercion, duress, fraud, undue influence and any other feeling that may be imposed upon.

I declare under penalty of perjury that the foregoing is true and correct. Executed on 29 day of 11, 2006.

Respectfully submitted,

Wayne A. Baker
Wayne Baker # 10820-084
FCI Beckley, PO Box 350
Beaver, WV 25813

Affidavit in Support

I, Corey Robinson, do hereby depose and state the following concerning the Worrell and Blaze incident:

1. I was working in food service on 11/10/06;

2. I witnessed the whole affair between Worrell, Blaze, and Baker;

3. Blaze requested to use the restroom numerous times, but Worrell would not let him out;

4. Blaze even motioned to Lucas to let him out, but Lucas would not;

5. Blaze asked Baker a couple of times to talk with Worrell and let him know that it was urgent;

6. Worrell would not let him;

7. I seen Blaze hold the bucket in the air and show Worrell, but Worrell refused;

8. I could tell from Blaze's demeanor that he was serious;

9. At the time I thought it was funny but after Worrell took Blaze to the SHU, it was not so funny anymore;

10. I believe it is wrong what Worrell made Blaze do and then put him in the SHU for it;

11. I make this declaration free from coercion, fraud, duress, undue influence, and any other influence that may be imposed upon.

I declare under penalty of perjury that the foregoing is true and correct. Executed on __29__ day of __11__, 2006.

Respectfully submitted,

*Corey Robinson*
Corey Robinson # 40088-074
FCI Beckley, PO Box 350
Beaver, WV  25813

James Blaze 12021621
Federal Correctional Institute
PO Box 350
Beaver WV 25813

Chief Judge
Honorable David A Faber
Robert C. Byrd Court House
110 N. Heber St.
Beckley WV 25813

US MARSHALS SERVICE
X-RAYED

BY: